[Mobile J. & K. R. R. Co. v. Bay Shore Lumber Co.]

# Mobile J. & K. R. R. Co. v. Bay Shore Lumber Co.

## Trover.

(Decided Feb. 10, 1910. 51 South. 956.)

1. *Carrier; Goods; Delivery to Wrong Person.*—Where a carrier delivers a shipment of goods without the production or assignment of the bill of lading, to the wrong person, the carrier is liable for a conversion.

2. *Same; Negligence; Evidence.*—Evidence of a custom or usage is never admissible to justify the doing of an act which is negligent in itself, such as a custom of carriers to deliver goods, to others than the consignee, or to one to whom the consignee has not authorized delivery.

3. *Same.*—Where the action was against a carrier for a carload of lumber delivered to the wrong person, and the defense sought to justify the delivery because the invoice delivered by the shipper to the person who received the lumber described the car containing it, in connection with another car rightfully delivered to such person, such defense is not sustained by evidence showing that the invoice described the lumber in the car actually sold to such person but did not describe the lumber in suit.

4. *Custom and Usage; Varying Terms of Contract.*—A custom or usage can never vary the stipulation of an express contract; and in order to vary the implications of a contract, such custom or usage must have been established and acted on generally, for a sufficient length of time to raise the presumption of its knowledge.

5. *Estoppel; Pleading; Sufficiency.*—Where the action is by a shipper against the carrier for the conversion of a carload of lumber by delivery to the wrong person, a plea which seeks to invoke an estoppel on account of the act of the plaintiff in making out an erroneous invoice is not sufficient where it does not identify the lumber sued for.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by the Bay Shore Lumber Company against the Mobile, Jackson & Kansas City Railroad Company. Plaintiff had judgment, and defendant appeals. Affirmed.

See, also, 158 Ala. 622, 48 South. 377.

Plea 2 as amended is as follows:

"For further answer to said complaint, defendant said: That plaintiff shipped over defendant's line of railroad from some point in the state of Mississippi two car loads of lumber to the city of Mobile, in the state of Alabama, said lumber being loaded on cars of the defendant No. 3212 and No. 242 respectively, and consigned to plaintiff's company at Mobile; that said cars of lumber were designated on one freight waybill. Defendant further says that said lumber had been shipped to Mobile for the purpose of selling and disposing of the same in the market, and that upon the arrival of said cars in Mobile plaintiff by its agents and servants prepared and delivered to the Lewis Land & Lumber Company, a corporation engaged in the purchase and sale of lumber in the city of Mobile, an invoice or statement in writing, in words and figures as follows:

" 'Mobile, Ala., Nov. 28, 06.

" 'Our No. B. D. Order No. 45-G. Lewis Land & Lumber Co., Mobile, Ala., Dr. To Bay Shore Lumber Co., Manufacturers Yellow Pine Lumber. Cars. Nos. 3212 & 242, initial K. C. Shipped to Lewis Land & Lbr. Co., Mobile, Ala. Care of Munson S. S. Line.

| 32 pcs 5x12x38 _____6,089 |
| 23 " 4 1-2x5 1-2x43 _____2,040 |
| 49 " 6x8x43 _____8,248 |
| ———16,548 |

16,548 ft. at 30.00_____$579.18

" 'F. o. b. Mill. Copy'—

and that upon the demand of the said Lewis Land & Lumber Company, and upon the representation made by it that it had purchased the lumber upon said cars, the same was delivered to the said Lewis Land & Lumber Company. And the defendant further said that the lumber described in said complaint was contained in

said cars; and defendant says that in delivering said cars to the Lewis Land & Lumber Company it acted upon the representation of the said Lewis Land & Lumber Company that it had purchased the lumber upon said cars indicated in said invoice or statement in writing as aforesaid, and that in delivering said cars to the Lewis Land & Lumber Company it acted in accordance with its custom of dealing with said plaintiff and said Lewis Land & Lumber Company, both of which said corporations were constantly shipping lumber over its line of railroad from points in the states of Mississippi and Alabama to the city of Mobile; and in accordance with said custom defendant delivered to the Lewis Land & Lumber Company and to plaintiff corporation the various and sundry shipments of lumber made by them without the production of any bill of lading. And defendant further alleges that, when the plaintiff corporation prepared and delivered to the Lewis Land & Lumber Company the invoice or statement in writing hereinabove set out it knew that the defendant railroad company would, in accordance with said custom, which was well known to the plaintiff, deliver said cars of lumber to the Lewis Land & Lumber Company; and defendant further alleges that the negligence of plaintiff in preparing and delivering to the Lewis Land & Lumber Company said invoice or statement in writing, indicating a sale by the plaintiff to the Lewis Land & Lumber Company of said two cars of lumber, caused the defendant to surrender possession of said two cars of lumber as aforesaid."

McINTOSH & RICH, for appellant. The court erred in overruling the motion of the appellant to exclude the testimony of Stone relative to the custom of appellant in making deliveries of shipment, and in failing to

exclude the answer that the lumber was never delivered, and in failing to exclude the answer of the said witness relative to what was contained in the contract between the appellee and Hunter-Benn Co., as the contract was in writing, and was not produced.—*Money v. Howe,* 84 Ala. 80; *Hammond v. Blue,* 132 Ala. 337. Counsel insist that the court erred in the judgment rendered, since under the facts in this case, the appellee is estopped to deny the representation by the Lewis L. & L. Co. to the appellant.—*Turner v. Flinn,* 72 Ala. 522; *Kahn v. Peters,* 104 Ala. 528; *Robins, et al. v. Wooten,* 128 Ala. 376; 16 Cyc. 681; 2 Hutchison on Carriers, Sec. 678; 4 Elliott on Railroads, Sec. 1526.

INGE & ARMBRECHT, for appellee. Trover is the proper action.—*C. Ry. v. Lampley,* 76 Ala. 376; *A. & T. R. R. Co. v. Kidd,* 35 Ala. 220; 6 Cyc. 472 and 513. Counsel discuss the assignments of error relative to evidence and conclude that the court did not err, and in support thereof, cite.—*M. & B. R. R. Co. v. Worthing,* 95 Ala. 605; *Elliott v. Stocks,* 67 Ala. 290; *Abbott v. Page,* 92 Ala. 575; *Woodstock I. Co. v. Roberts,* 87 Ala. 441; *Nelson v. Shelby Mfg. Co.,* 96 Ala. 531; *L. & L & G. I. Co. v. Tillis,* 110 Ala. 213; *Sowell v. The Bank,* 119 Ala. 93; *A. G. S. v. Bailey,* 112 Ala. 176. Counsel insist that there was no estoppel shown.—*L. & N. v. Barkhouse,* 100 Ala. 544; *Bullard v. Young,* 3 Stew. 460.

MAYFIELD, J.—Appellee sued the lumber in trover for the conversion of certain lumber or timber which is minutely described in the complaint. The facts of the case are substantially as follows: The plaintiff shipped two cars of lumber over defendant's road from some point in Mississippi to Mobile, Ala. These cars in which the lumber was shipped were cars of the defendant rail-

road company, and were numbered 3212 and 242, respectively. Upon the arrival of the lumber in Mobile one Bates, representing plaintiff, called on one White, who was cashier of the railroad company and authorized to represent the defendant in the matter, and paid the freight on the two cars, and then told White that the two cars were for different parties to whom plaintiff had contracted to sell the lumber, that car 3212 was to go to the Munson Line Docks for the account of the Lewis Land & Lumber Company, and that car 242 was to be carried to the defendant's dump to await the order of Hunter, Benn & Co., to whom they had contracted to sell the same. Later Bates called at the railroad office to know what had become of car 242, as Hunter, Benn & Co. had not received it. At this time Bates talked to White, the cashier, and one Holt, who was the defendant's chief clerk, and to another of defendant's agents, Mr. Drago. In this conversation Mr. White told Mr. Bates that it was not Bates' fault that the car had not been delivered, that he (Bates) had given the proper instructions that the car should be delivered to Hunter, Benn & Co.; but one of the defendant's agents at this time told Bates that the car had been delivered to the Lewis Land & Lumber Company on the 4th or 6th of November, and that Drago told him that the car had been delivered to the Lewis Company as ordered, and not to the Hunter Company. It was undisputed that the car of lumber No. 3212 was delivered to the Lewis Company, to whom it was ordered to be delivered, and that about a week after it was delivered an agent of the Lewis Company telephoned defendant for the delivery of car 242, and that after some controversy it was delivered to the Lewis Company, and not the Hunter Company, as directed by plaintiff, and delivered without the production of a bill of lading or any order from plaintiff, except the invoice furnished

the Lewis Company by plaintiff and upon which it had theretofore delivered car 3212. It is undisputed that the defendant delivered the car to the wrong party and to a party who had no claim or right to it, and delivered it without the production or the assignment of the bill of lading.

Without more, this, of course, would render defendant liable to plaintiff in action of trover for the car of lumber so wrongfully delivered. This court, in the case of *L & N. R. R. Co. v. Barkhouse,* 100 Ala.544, 13 South. 534, speaking through McClellan, J., said: "A bill of lading does not pass by delivery, and the possession of it by one other than the consignee, without indorsement, will not authorize or justify the carrier in delivering the consignment to such person.—Hutchinson on Carriers, § 344; 2 Am. & Eng. Encyc. of Law, 241. The obligation to deliver only to the party having title to the bill of lading is imposed by law on the carrier, and is absolute. Any custom of a particular carrier, or of carriers generally at a particular place, to make deliveries to persons merely in possession of the bill of lading, is a bad custom, and cannot be adduced in evidence to exempt such carrier or carriers from liability for deliveries to wrong persons. Trover is the proper action, where there has been a delivery of property by a common carrier to a person not entitled to it, by mistake. Such wrongful delivery is a conversion.—*Bullard v. Young,* 3 Stew. 46; *Ala. & Tenn. River R. R. Co v. Kidd,* 35 Ala. 209." For a custom or usage to vary the implications of a contract, it must be established and acted upon generally and sufficiently long to raise a presumption of its knowledge, and it can never vary the expressed stipulations of a contract. It is only a reasonable custom, not opposed to law, which is admissible to aid in the interpretation of contracts. Unfair and unrighteous ones the law should not allow to exist

much less to encourage or enforce. Custom or usage is never admissible to justify the doing of an act which is negligent per se, such as a custom of carriers to deliver goods to persons other than the consignee, or to whom the consignee has not directed or authorized the delivery.—*Barkhouse's Case, supra; Andrew's Case,* 99 Ala. 438, 12 South. 432; *Anderson v. Whittaker, et al.,* 97 Ala. 690, 11 South. 919; *Haas v. Hudmon,* 83 Ala. 174, 3 South. 302; *Barlow v. Lambert,* 28 Ala. 704, 65 Am. Dec. 374; *Smith v. Rice,* 56 Ala. 417.

The defendant attempted to avoid liability by setting up a special defense, as shown by plea No. 2 as amended. (The reporter will set out this plea in the statement of facts.) Demurrers were interposed to this plea, and were overruled, and the trial was had upon it and that of the general issue. It is unnecessary for us to pass upon the sufficiency of this plea, because it was ruled sufficient by the trial court, which ruling was in favor of appellant. If the plea was sufficient, and not subject to the demurrers interposed, and we will so treat it, for reasons before assigned, it is, as was intimated by this court on the former appeal (see 158 Ala. 622, 48 So. 377), on the theory of a plea of estoppel, and not as one setting up a reasonable custom which would justify the delivery to the wrong person. The allegations as to custom were mere inducements to show that plaintiff had directed or ordered defendant to deliver the lumber in question to the Lewis Company, and not to plaintiff, or to the Hunter Company, to whom it had sold the lumber in question, and that, having so ordered defendant to deliver to the Lewis Company, it was now estopped to claim or show a wrongful delivery of the lumber sued for.

It was claimed and alleged that the plaintiff so order-ed, directed, or caused the wrongful delivery of the lumber sued for by making out and delivering to the Lewis

Company an invoice which described both cars, and the lumber sued for, as well as that sold to the Lewis Company. This is the effect, if not the words, of the plea. As was ruled by this court on former appeal, it was necessary that the pleas should identify the lumber sued for. It is true that the invoice furnished by plaintiff to the Lewis Company did describe both cars; but it did not describe the lumber sued for, and there is no pretense in the evidence that it did so describe the lumber sued for. If the lumber sold to the Lewis Company could be said to be in both cars, it was because it lapped over onto the other car. The lumber or timber in both cars is shown to be in very long pieces, some of it longer than the car, and that it overlapped onto the other car, and for this reason the cars were shipped together, and one answered as an idler for the other; and it is only in this sense that the lumber sold to the Lewis Company was in car 242. For this reason, it was proper to mention the car in the invoice; but it is not contended or shown that the Lewis Company bought any of the lumber in car 242, for which this suit is brought, but that they only bought that in car 3212, and that they only paid for the freight and switching of this one car, and not for both, and that car 242 was only an idler or trailer, because the lumber in the two cars overlapped. Their letter to plaintiff clearly shows this. The letter is as follows: "The Lewis Land & Lumber Company, Wholesale Lumber and Timber, City Bank & Trust Company Building, Mobile, Ala., 12-1-06. Messrs. Bay Shore Lumber Co., Mobile, Ala.—Gentlemen: Remittance car number 3212. Enclosed herewith find our check for $44.66 covering freight and switching on car K. C. 3212 which you ordered to the Munson Line for us. Please accept our thanks for looking after this car for us. Yours very truly, Lewis Land & Lumber Co., J. Howard Smith, Secretary." It was some time after

the delivery of the lumber from this car that the delivery was made from car 242, which contained the lumber in question.

It indisputably appears that the invoice to the Lewis Company did not describe the lumber in car 242 sued for, either in quantity or quality; but it did accurately describe the lumber in car 3212, which was sold to the Lewis Company, both as to quantity and quality. Hence the defendant wholly failed to establish the material averments of its plea, and all the evidence shows that the wrongful delivery was made on account of defendant's own negligence and wrong, and in violation of its bill of lading, and in violation of expressed and explicit instructions of the plaintiff consignee. It cannot be contended that the invoice called for a delivery of the cars, rather than the lumber described therein; and because the lumber described therein might be in two cars, or in one car, would not be an order to deliver other lumber as good, which might be in the cars and which were not described in the invoice or directions to deliver. Under all the evidence, and under every theory of it, the defendant delivered plaintiff's lumber to the wrong party without a bill of lading, and without authority, and contrary to express and specific directions from plaintiff. The verdict and judgment rendered were the only verdicts or judgments that could have been properly rendered under the issues and evidence in this case. The general affirmative charge should have been given for the plaintiff.

We find no errors in the record of which defendant can complain. If there be any, they are necessarily without injury to the defendant, appellant. The judgment of the lower court is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.