(80 South. 101)

### SOUTHERN RY. CO. v. HARRIS et al.
### (8 Div. 103.)

(Supreme Court of Alabama. Nov. 14, 1918.)

1. CARRIERS ☞93—FREIGHT—MISDELIVERY—CONVERSION.

It was absolute duty of a railroad transporting cotton to deliver it according to order of consignors, who were also consignees, who indorsed bill of lading to plaintiffs, who paid attached draft for market value of cotton, and delivery to wrong person was a conversion, for which trover lies.

2. CARRIERS ☞93 — FREIGHT — MISDELIVERY —MISTAKE IN WAYBILL.

Absolute duty of carrier to deliver to indorsees of bill of lading was not qualified by directions of waybill, paper serving private purposes of carrier, which, by mistake of agent, stated company other than indorsees was to be notified.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. CUSTOMS AND USAGES ☜17—CARRIAGE OF FREIGHT—DELIVERY—BILL OF LADING.

No effect can be given a practice or custom that would sanction delivery of freight by carrier otherwise than in accordance with absolute obligation resulting from terms of ordinary bill of lading.

4. CARRIERS ☜93—CARRIAGE OF FREIGHT—MISDELIVERY OF SHIPMENT—EXCUSE.

Delivery of a shipment to the wrong person by a common carrier is inexcusable for any cause of fraud, imposition, or mistake, however occasioned, that would not also release the carrier from the duty of safe carriage.

5. CARRIERS ☜94(1) — FREIGHT — MISDELIVERY—LIABILITY—DEMAND.

Where carrier misdelivered to company other than firm to which bill of lading had been indorsed for delivery on payment of draft, no demand on carrier for cotton was necessary to perfect, in indorsees of bill of lading, cause of action for conversion.

6. CARRIERS ☜159(4)—FREIGHT—MISDELIVERY—BILL OF LADING—NOTICE OF CLAIM.

Restrictive stipulations in bill of lading with reference to notice of claim of loss or damage, or to period within which claim should be made, have no effect where carrier's absolute duty has been breached by delivery to wrong party, a conversion.

7. CARRIERS ☜147 — FREIGHT — LIMITATION OF LIABILITY—BILLS OF LADING.

Code 1907, § 4297, avoiding contracts forfeiting right of action, and sections 5546, 5547, as to bills of lading and duplicate freight receipts, rendered nugatory any stipulation of bills of lading covering intrastate shipments undertaking to set up agreements in qualification of established legal rights, as condition to existence of cause of action or right to declare for wrong suffered.

8. CARRIERS ☜94(4)—FREIGHT—CONVERSION BY CARRIER—DAMAGE.

Code 1907, § 5514, specifying rule of damages for loss, injury, or delay in delivering goods, does not apply where property shipped was converted by carrier.

9. CARRIERS ☜94(1) — FREIGHT — DAMAGES AND RIGHTS OF ACTION—CONVERSION.

Code 1907, § 5515, requiring itemized and verified statement of goods shipped to be presented, and section 5518, as to failure to make or file verified claim, have no application where property shipped was converted by carrier.

10. CARRIERS ☜159(4)—FREIGHT—MISDELIVERY—STIPULATIONS AS TO LIABILITY.

Neither consignors-consignees of shipment, nor indorsees of bill of lading, held, under the evidence, parties possessing, peculiarly, knowledge affecting conversion by misdelivery, which they should, under proviso of Code 1907, § 4297, have communicated to carrier.

11. APPEAL AND ERROR ☜1027—HARMLESS ERROR—RIGHT OF RECOVERY—ERRORS OTHERWISE THAN AS TO MEASURE OF RECOVERY.

Where, under settled principles, plaintiffs were entitled to recover from defendant carrier as for conversion, reversible error cannot be predicated on errors not affecting measure of recovery.

12. CARRIERS ☜94(4)—MEASURE OF DAMAGES—PROPERTY OF FLUCTUATING VALUE.

For conversion of shipment by misdelivery by carrier, indorsees of bill of lading were entitled to recover the value of the shipment with interest, and, that value being fluctuating, it was within jury's discretion to apply highest market value between conversion and trial.

13. TENDER ☜1 — UNLIQUIDATED DAMAGES SUBJECT TO JURY'S DISCRETION.

Under the common law, tender is not available where the action is for unliquidated damages, the amount of which is subject to the jury's discretion.

14. APPEAL AND ERROR ☜1040(15)—HARMLESS ERROR — OVERRULING DEMURRER TO REPLICATION.

In action against carrier for conversion of shipment by misdelivery, any error, in overruling demurrer to replication that wrong was not for loss or injury, but for misdelivery in bad faith, held not prejudicial to carrier in condition of case after court overruled demurrer to plea averring tender of amount collected from party to which misdelivery was made.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Action by R. N. Harris, Jr., and others, against the Southern Railway Company. From judgment for plaintiffs, defendant appeals. Affirmed.

Wert & Lynne, of Decatur, for appellant.
E. W. Godbey, of Decatur, for appellees.

McCLELLAN, J. The appellees instituted this action of trover for the conversion by the appellant carrier of 25 bales of cotton consigned by Jordan and Moss, at Guntersville, Ala., to themselves at Decatur, Ala., "order notify" the appellees, who were dealers in cotton at Decatur. The bill of lading was issued by the N. C. & St. L. R. R. Co. The route contemplated, and that used to transport the cotton, was over the N. C. & St. L. Ry. to Huntsville, Ala., and thence to Decatur over the appellant's line. The shipment was intrastate, not interstate; hence the laws applicable to define the rights and liabilities of the parties are the state, not the federal, laws.

[1] The consignors, who were also the consignees, indorsed the bill of lading, and attached it to a draft on the appellees for the then market value of the cotton. The draft was paid by the appellees in due course; and the thus indorsed bill of lading was delivered to them, and thereupon the appellees became invested with the title to the bill of lading representative of the cotton. Instead of delivering the cotton to the appellees, the appellant delivered it, through the Gulf Compress Company, to the Jones Cotton Company, another concern dealing in cotton at Decatur. It was the absolute duty of the appellant to deliver the cotton according to the order of Jordan and Moss, and the delivery thereof to the wrong person was a conversion for which this action of trover lies. Mobile, etc., R. R. Co. v. Bay Shore Co., 165 Ala. 610, 51 South. 956, 138 Am. St.

Rep. 84; South. Ry. Co. v. Webb, 143 Ala. 304, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 97; 10 C. J. pp. 257–260; A. C. L. R. R. Co. v. Dahlberg Co., 170 Ala. 617, 54 South. 168. Delivery of a shipment to one who does not produce the bill of lading is at the peril of the carrier. Authorities, supra.

[2, 3] The carrier offered as an excuse for its tortious fault in effecting delivery to the wrong parties, who had no right to the bill of lading or the cotton, the fact that an agent of the initial carrier erroneously substituted on the "waybill," a paper distinct from the bill of lading and that was only intended to serve the private purposes of the carriers, the Jones Cotton Company as the parties to be notified. The carrier's absolute duty in the premises resulted from the bill of lading, and was not at all qualified by the directions in the "waybill." Indeed, the error therein was merely with respect to the party to be notified, and this direction did not even purport to alter the absolute obligation of the carrier to deliver the cotton to the consignees or according to their order. Only the fault of the shipper can exonerate the carrier from the consequences of a delivery to the wrong person. Furmen v. Union Pac. R. R. Co., 106 N. Y. 579, 13 N. E. 587. No effect can be accorded a practice, or so-called custom, that would sanction a delivery otherwise than in accordance with the absolute obligation resulting from the terms of the ordinary bill of lading. Mobile, etc., R. R. Co. v. Bay Shore Lumber Co., 165 Ala. 610, 51 South. 956, 138 Am. St. Rep. 84.

[4] Delivery of a shipment to the wrong person, by a common carrier, is inexcusable for any cause of fraud, imposition, or mistake, however occasioned, that would not also release the carrier from the duty of safe carriage. South. Ry. Co. v. Webb, 143 Ala. 304, 313, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 92, with note; North Penn. R. R. Co. v. Bank, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; 2 Hutchinson on Carriers (3d Ed.) § 668; Cavallaro v. T. & P. Ry. Co., 110 Cal. 348, 42 Pac. 918, 52 Am. St. Rep. 94; Foy v. Chicago, etc., Ry. Co., 63 Minn. 255, 65 N. W. 627.

[5] Aside from the legal results consequent upon the absolute duty stated, it may be added that the evidence is conclusive to these effects: That the carrier did not at the time undertake or intend the delivery of this cotton to the Compress Company as the agent of Jordan and Moss or of the appellees; and that at the time the carrier, acting on the mentioned error in the "waybill" and not observing its duty under the bill of lading, only contemplated a delivery to the Jones Cotton Company, who had no right to the bill of lading or to the cotton. Since the act of delivering the cotton to the wrong parties completed the conversion, an act in unpalliated breach of the carrier's

precedent, primary, absolute duty, no demand on the carrier for the cotton was necessary to characterize as tortious such act of delivery, and hence not requisite to perfect in the appellees the cause of action declared on in this complaint. Glaze v. McMillion, 7 Port. 279, 281; Strauss v. Schwab, 104 Ala. 669, 672, 16 South. 692; 38 Cyc. pp. 499–500; Bolling v. Kirby, 90 Ala. 215, 7 South. 914, 24 Am. St. Rep. 789, with note; Mo. Pac. Ry. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861, 867; L. & N. R. R. Co. v. Barkhouse, 100 Ala. 543, 13 South. 534.

[6-10] Restrictive stipulations in a bill of lading, with reference to notice of claim of loss or damage, or to the period within which a claim should be made, have no effect where the carrier's absolute duty has been breached by delivery to the wrong party, constituting, by the act itself, a conversion. 4 Elliott on Railroads (2d Ed.) § 1512; 10 Cyc. pp. 184, 335, 400, with notes; South. Ry. Co. v. Webb, 143 Ala. 304, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 97. Furthermore, independently, this being an intrastate shipment, the provisions of Code, §§ 4297, 5546, 5547, rendered nugatory any stipulation of bills of lading undertaking to set up agreements in qualification of established legal rights or notices of claim as a condition to the existence of the cause of action or to the right to declare for the wrong suffered. Code, §§ 5514, 5515, 5518, are without application where a conversion of the property was effected by the carrier. The decisions by the Court of Appeals in South. Ry. Co. v. Brewster, 9 Ala. App. 597, 63 South. 792, and Ill. Cent. R. R. Co. v. Kilgore, 12 Ala. App. 358, 67 South. 707, did not involve conversions of the property by the carriers. It is manifest that neither the consignors-consignees nor the plaintiffs, who acquired the bill of lading, were parties possessing, peculiarly, knowledge that they should, under the proviso of the statute (section 4297), have communicated to the carrier effecting the conversion of the cotton by delivery of it to the wrong parties. South. Exp. Co. v. Hess, 53 Ala. 19, 24, 25.

[11] The application of the stated settled principles to the undisputed determinative facts disclosed by the record confirmed the right of the plaintiffs to recover for the conversion of the cotton. Under such circumstances, reversible error cannot be predicated of errors (if any) in special rulings that, in this character of action, do not involve considerations referable alone to the measure of the recovery to which the plaintiffs are entitled. Bienville Water Co. v. Mobile, 125 Ala. 178, 184, 27 South. 781; Merriweather v. Sayre Co., 182 Ala. 665, 667, 668, 62 South. 70; Jones Cotton Co. v. Snead, 169 Ala. 566, 572, 53 South. 988; W. U. Tel. Co. v. Whitson, 145 Ala. 426, 431, 432, 41 South. 405;

Donahoo, etc., Co. v. Durick, 193 Ala. 456, 466, 69 South. 545; Adams v. Corona, etc., Co., 183 Ala. 127, 131, 62 South. 536; De Kalb County v. McClain, 201 Ala. 565, 78 South. 961.

[12, 13] Some months after the wrongful delivery of the cotton to the Jones Company, the carrier collected from that company an amount based upon the calculated market value of the cotton, with interest, at the time it was so delivered to the Jones Cotton Company, and subsequently tendered this sum to the appellees in asserted discharge of the damages resulting. The appellees refused to accept the sum then tendered. For the conversion consummated by the delivery of the cotton to the wrong parties the appellees were entitled to recover in trover the value thereof with interest. Loeb v. Flash, 65 Ala. 526, 537, 538; 12 Michie's Dig. p. 573. Since the property's value was conclusively shown to be subject to fluctuation, it was within the jury's discretion, from the data afforded by the testimony, to ascertain and apply the highest market value of the cotton between the date of the conversion and the day of the trial. Authorities supra. Under the common law tender is not available where the action is for unliquidated damages, the amount of which is subject to the jury's · discretion. Wilhite v. Ryan, 66 Ala. 106, 109, wherein the rule of Green v. Shurtliff, 19 Vt. 592, 596, was approved; Ganus v. Tew, 163 Ala. 358, 361, 50 South. 1000; 38 Cyc. 133. The rule has not been changed by statute in this state so as to constitute an exception applicable to the present action. The effort to avail of the tender made was, as a legal result, abortive. Plea 6 averred a tender to the appellees of the mentioned sum, collected from the Jones Cotton Company, and further alleged that at the time the cotton should have been delivered at destination (Decatur) it had "a well-known, definite, and fixed market value." The contention of appellant that the plea (6) was conclusively proven in all material respects is refuted by the fact, shown·by the evidence, that the market value of cotton was fluctuating, contradicting the notion that it was "fixed" as of any time. The market value was, upon occasions, certain, but was not shown to be "fixed." Furthermore, in addition to a general traverse of the averments of plea 6, the plaintiff replied, through replication numbered 4, as follows: "The wrong complained of was not for loss or injury to the cotton, but for a misdelivery, viz. the wrongful delivery by the carrier to the Jones Cotton Company, in bad faith." By overruling the demurrer to plea 6, the court put the plaintiffs to a reply (No. 4) that, apart from the redundant averment of "bad faith," cast the cause in contest so as to require the application of the common-law doctrine which renders tender unavailable in actions permitting a recovery of unliquidated damages, or damages the amount of which may be affected by the exercise of the jury's discretion. Green v. Shurtliff, supra; Wilhite v. Ryan, supra.

[14] In the posture of the case after the court had overruled the demurrer to plea 6, there was no prejudicial error in overruling the demurrer to replication numbered 4. If it should be assumed that the plaintiffs were not entitled to have the jury consider the question of exemplary damages as an element of the recoverable damages, there is nothing in the record wherefrom it could be concluded that exemplary damages constituted any part of the sum awarded by the jury. There was abundant evidence of the market value of the cotton between the date of conversion and the day of the trial on which to found an award in the sum set down in the verdict—an amount that was, doubtless, compensatory only.

In addition to the conclusively established fact that the cotton was converted by a delivery to the wrong parties, wherefrom, as before stated, the right of the plaintiffs to recover inevitably resulted, it may be further observed that no prejudicial error attended any of the rulings of the court on the admission or rejection of testimony.

The judgment is affirmed.

Affirmed.

MAYFIELD, SAYRE, and GARDNER, JJ., concur.