(96 South. 912)

**LOUISVILLE & N. R. CO. v. B. F. RODEN GROCERY CO.** (6 Div. 858.)

(Supreme Court of Alabama. May 10, 1923. Rehearing Denied June 28, 1923.)

**1. Carriers ⊙94(2)—Complaint substantially in Code form for failure to deliver held good.**

Count for nondelivery of lime by carrier, which was in Code form, except that it averred that lime was consigned to third person, that defendant failed to deliver to consignee, and that consignor for valuable consideration transferred the car to plaintiff while in transit, stated cause of action.

**2. Carriers ⊙94(2)—Could not complain that plaintiff assumed burden of proving nondelivery to itself and original consignee.**

In action against carrier for nondelivery of lime, brought by one claiming transfer of the lime to it by the consignor while in transit, the carrier could not complain that by counts in the complaint plaintiff assumed burden of proving nondelivery to itself or to original consignee.

**3. Carriers ⊙94(3)—Assignment of invoice held admissible as circumstance, though not conveying title.**

In action against carrier for nondelivery of lime, brought by one claiming assignment to it by consignor while lime was in transit, assignment of invoice though conveying no title to plaintiff held admissible as circumstance for consideration in determining whether title was transferred.

**4. Carriers ⊙89—Delivery to stranger on order of unauthorized person held a breach of duty.**

Where, on consignee's refusal of lime, carrier, instead of returning to consignor or storing the lime, forwarded it to strangers to the contract on order of unauthorized person, it was guilty of a breach of its duty as carrier.

**5. Carriers ⊙175—Initial carrier liable for connecting carrier's wrongful delivery.**

Under the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), initial carrier was

liable for connecting carrier's breach of duty in forwarding shipment to strangers to the contract on order of unauthorized person upon consignee's refusal to receive, instead of storing the goods.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

Action for damages by the B. F. Roden Grocery Company against the Louisville & Nashville Railroad Company, for failure to deliver certain goods. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

Tillman, Bradley & Baldwin and John S. Coleman, all of Birmingham, for appellant.

Each count of the complaint was demurrable. 4 C. J. 269; 4 R. C. L. 760; A. & T. R. R. Co. v. Kidd, 35 Ala. 209; Ocean S. S. Co. v. People's Shoe Co., 202 Ala. 594, 81 South. 241; T. C. I. Co. v. Smith, 171 Ala. 251, 55 South. 170; B. R., L. & P. Co. v. Nicholas, 181 Ala 491, 61 South. 361. It was error to admit in evidence the purported assignment from Brierfield Lumber Company to Roden Grocery Company. Grant v. Sicklestell Lbr. Co., 155 Mich. 600, 119 N. W. 1092. Refusal by the consignee to accept is a complete defense to an action for failure to deliver. C. of Ga. v. Montmollen, 145 Ala. 468, 39 South. 820. Prima facie, upon the delivery of the shipment to the defendant, title passed to the consignee, and plaintiff had no cause of action. 2 Michie's Ala. Dig. 644; Sou. Ry. v. Brewster, 194 Ala. 47, 69 South. 111; A. G. S. v. Altman, 191 Ala. 429, 67 South. 589. A bill of lading does not pass by delivery. Capehart v. Granite Mills, 97 Ala. 353, 12 South. 44; L. & N. R. Co. v. Barkhouse, 100 Ala. 543, 13 South. 534; Davis v. Hines, 17 Ala. App. 443, 85 South. 882. Liability of the initial carrier ended when the goods reached destination and were refused. Schlitten v. Hines, 196 App. Div. 254, 186 N. Y. Supp. 831; Ocean S. S. Co. v. People's Shoe Co., supra; L. & N. R. Co. v. Brewer, 183 Ala. 172, 62 South. 698. The initial carrier is not liable for negligence of the connecting carrier after its relationship as carrier has ceased. Adams Seed Co. v. C. G. W., 181 Iowa, 1052, 165 N. W. 367, L. R. A. 1918B, 622; N. & W. R. Co. v. Stuart's Co., 109 Va. 184, 63 S. E. 415.

Black & Harris, of Birmingham, for appellee.

The Carmack Amendment makes the connecting carrier agent of the initial carrier. G., H. & S. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516; Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; 4 R. C. L. § 360; 10 C. J. 543. A carrier is liable for wrongful delivery at the instance of an unauthorized agent or broker. Sou. Ry. v. Webb, 143 Ala. 304, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 97; Stoddard Lbr. Co. v. O. W. R. & N. Co., 84 Or. 399, 165 Pac. 363, 4 A. L. R. 1275. A case tried by the court without a jury will not be reversed for improper or incompetent evidence if, there is any valid evidence to support the judgment. Holmes v. State, 108 Ala. 24, 18 South. 529; Woodrow v. Hawving, 105 Ala. 240, 16 South. 720; Berlin Mach. Works v. Ala. City F. Co., 112 Ala. 488, 20 South. 418. A count substantially in Code form is not subject to demurrer. Code 1907, § 5382, form 15; L. & N. R. Co. v. Farmers' Prod. Co., 17 Ala. App. 388, 85 South. 578.

MILLER, J. This is a suit by B. F. Roden Grocery Company, a corporation, against the Louisville & Nashville Railroad Company, a body corporate, for failing to deliver a carload of lime, received by the defendant from the Brierfield Lumber Company at Wilmay, Ala., consigned to McComb & Magnolia Light & Railway Company, at Fernwood, Miss. The plaintiff claims and avers that the carload of lime was transferred and assigned to it by the consignor during transit for a valuable consideration. The case was tried by the court without a jury. Judgment was rendered by the court in favor of plaintiff and against the defendant, from which judgment the defendant prosecutes this appeal.

There are three counts in the complaint.

[1] Count 1 is in Code form (No. 15, p. 1197, Code 1907), except it avers the car of lime was in cooperage to be delivered to McComb & Magnolia Light & Railway Company, and it avers the defendant failed to deliver it to the consignee. It also avers the consignor for a valuable consideration transferred the car of lime in cooperage while in transit to plaintiff. This count states a cause of action, and is not subject to the demurrers assigned to it. Form 15, p. 1197, Code 1907.

[2] Count 2 is similar to count 1, except it also avers the carload of lime in cooperage was while in transit for valuable consideration transferred and assigned to and became the property of the plaintiff, and it also avers it was not delivered to the consignee nor to the plaintiff.

Count 3 is the same as count 2, except it also avers that, after the car of lime was delivered to defendant, consigned to the said consignee, the consignee countermanded the order, and contended it did not order the lime from the consignor, and the consignor sold and transferred the shipment of lime to plaintiff, it becoming the property of plaintiff, but defendant negligently failed to deliver the car of lime to the consignee or to the plaintiff.

These counts, 2 and 3, are substantially the same as count 1, except plaintiff as-

sumes in them the additional burden of proving the car of lime was not delivered to it or the consignee, of which the defendant appellant cannot complain. It assumes the burden of proving both.

The defendant pleaded in short by consent the general issue with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action.

[3] The court did not err in allowing plaintiff to introduce in evidence a written transfer and assignment of Brierfield Lumber Company, the consignor, to the plaintiff of an invoice of this lime, as follows:

"Brierfield Lumber Company,

"Successors to Bowden Lime Company, Inc.

July 27, 1917.

"Sold to McComb & Magnolia Light & Ry. Co., McComb, Miss. Clark Building Material Co.

"Shipped to McComb & Magnolia Light & Ry. Co., Fernwood, Miss. Chg. McComb & Magnolia Light & Ry. Co. 7—27—17 B.C.T. Car. No. N. S. 21256.

200 in cooperage $1.23 ........................ $246 00
                                 72 00

                                 $174 00"

While this in itself conveyed and transferred no title to the lime to plaintiff, still it was a circumstance for the court to consider in determining, from all the evidence, if the title to the lime was transferred to plaintiff by Brierfield Lumber Company. George R. Moore, president of the Brierfield Lumber Company, and witness for defendant, testified that the car of lime was assigned to plaintiff, and that, after his company received a bill of lading for this lime, the above-quoted invoice was transferred and forwarded with the bill of lading to the plaintiff. There was evidence introduced by the plaintiff tending to show there was an assignment on and of this bill of lading to plaintiff by the Brierfield Lumber Company. There was also evidence that Wilmay, Ala., was a nonagent stop, and a conductor's waybill was issued for the car of lime, and no bill of lading was issued for it. There is also evidence showing, or from which the court could fairly and reasonably infer, that all title of Brierfield Lumber Company in the lime was transferred to the plaintiff, that the title to the lime was in plaintiff, and that the consignee countermanded the order for the lime while it was in transit.

In the case of Ala. & Tenn. R. R. Co. v. Kidd, 35 Ala. 209, the rule is thus stated:

"It must be remembered that, in contracts for the carriage of goods, the obligation is not all on one side. It is as much a part of the contract, that the owner or consignee shall be ready at the place of destination to receive the goods when they arrive, or within a reasonable time thereafter, as that the carrier shall transport and deliver them. If, however, the consignee is dead, or absent, or fails to receive the goods, the carrier is not justified in abandoning them; unless, perhaps (for even this is by no means clear) where the consignee, after actual notice of the arrival of the goods, refuses to receive them. See Fisk v. Newton, 1 Denio, 45, 43 Am. Dec. 649; Smith y. Nashua R. R., 27 N. H. [2 Foster] 86; 59 Am. Dec. 364; Hemphill v. Cheine, 6 Watts & S. 62; Pierce, R. R. 448, 449; 1 Parsons, Cont. 660. On the contrary, it is his duty to secure them for the owner. He may, if he so elect, keep them as a bailee on deposit; or, if he has come under no obligation, either by the terms of his agreement, or the course of business, to hold the goods as bailee, he has the right to leave them in store with some responsible third person, and thus discharge himself from all further liability."

[4, 5] The evidence material on this point is thus stated in brief by appellant:

"The shipment was delivered at Fernwood, Miss., on or about August 11 or 12, 1917, and tendered to the consignee, McComb & Magnolia Light & Railway Company, but shipment was refused by the consignee. The agent of the Fernwood & Gulf Railroad Company was then instructed by Jas. M. Clark, of the Clark Building & Material Company, to deliver the car containing the shipment to the I. C. Railroad Company, billed to Dobbs & Wetmore, Magnolia, Miss. This the Fernwood & Gulf Railroad Company did, and the shipment was subsequently received by Dobbs & Wetmore at Magnolia, Miss., and the amount of $75, was remitted by that concern to the Clark Building & Material Company at Jackson, Mississippi.

"According to the evidence for the plaintiff, the Clark Building & Material Company were not the agents of the Brierfield Lumber Company nor of the plaintiff, and had no authority to order the shipment reconsigned after the refusal of same by the consignee, McComb & Magnolia Light & Railway Company."

No payment for the lime has ever been made to plaintiff or Brierfield Lumber Company. The consignee refused to receive the lime. The carrier did not secure the lime then for the owner. It did not keep the lime on deposit as bailee or as warehouseman. It did not store it with some responsible third person, but, without authority from the consignor or consignee or plaintiff, it delivered the car of lime to the I. C. Railroad Company to be delivered by it to Dobbs & Wetmore at Magnolia, Miss., on the order of Clark. There is evidence that Clark had no authority from plaintiff or from Brierfield Lumber Company to order the lime to be so delivered by this carrier to the I. C. R. Company for Dobbs & Wetmore, or any one else. When the consignee refused to receive the lime the carrier did not abandon it, and we need not decide whether it would have been justified under the evidence in so doing.

It appears, and we hold, the defendant's connecting carrier acted at its peril, for which the defendant is liable to the owner of the lime, the plaintiff, when it delivered the same to the I. C. R. Company for Dobbs & Wetmore. This was a wrong delivery or

disposition of the lime by the defendant. There was evidence that the order for it had been countermanded by the consignee before the car arrived; when it arrived the consignee refused to receive it; it was not stored by the carrier; it was not returned to the consignor by the carrier, and the consignor was not notified that the consignee refused to receive it, but, without authority of consignor, consignee, or plaintiff, it was delivered by the carrier to the I. C. R. Company for Dobbs & Wetmore, strangers to the contract.

This court, in Southern Ry. Co. v. Webb, 143 Ala. 314, 39 South. 264, 111 Am. St. Rep. 45, 5 Ann. Cas. 97, wrote:

"They are to be delivered at the place of destination to the party designated to receive them if he presents himself, or can with reasonable efforts be found, or to his order. No obligation of the carrier, whether the freight consists of goods or live stock, is more strictly enforced. * * * If the consignee is absent from the place of destination or cannot, after reasonable inquiry, be found, and no one appears to represent him, the carrier may place the goods in a warehouse or store with a responsible person, to be kept on account of and at the expense of the owner, he cannot release himself from responsibility by abandoning the goods or turning them over to one not entitled to receive them. * * * Diligent inquiry for the consignee, at least, was a duty, and no inquiry was made. Want of notice is excused when the consignee is unknown or is absent, or cannot be found after diligent search. And if, after inquiry, the consignee * * * cannot be found, the duty of the carrier is to retain the goods until they are claimed, or to store them prudently for and on account of their owner. He may thus relieve himself from the carrier's responsibility. He has no right under any circumstances to deliver to a stranger."

And on this subject this court wrote in Southern Ry. Co. v. Harris, 202 Ala. 265, 80 South. 103, as follows:

"Delivery of a shipment to the wrong person, by a common carrier, is inexcusable for any cause of fraud, imposition, or mistake, however occasioned, that would not also release the carrier from the duty of safe carriage. South. Ry. Co. v. Webb, 143 Ala. 304, 313, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 92, with note; North. Penn. R. R. Co. v. Bank, 123 U. S. 727, 6 Sup. Ct. 266, 31 L. Ed. 287; 2 Hutchinson on Carriers (3d Ed.) § 668; Cavallaro v. T. & P. Ry. Co., 110 Cal. 348, 42 Pac. 918, 52 Am. St. Rep. 94; Foy v. Chicago, etc., Ry. Co., 63 Minn. 255, 65 N. W. 627."

See, also, M. J. & K. R. Co. v. B. S. L. Co., 165 Ala. 610, 51 South. 956, 138 Am. St. Rep. 84.

We find the following general rule in 10 C. J. p. 264, §§ 378, 379, headnotes 73, 75, 77, on this subject:

"On the question of the carrier's liability for a delivery to the wrong person, it is immaterial that the delivery was secured by such person through mistake or fraud, even though the carrier, acting in good faith, was imposed on by such person. * * * The law exacts of the carrier absolute certainty that the person to whom the delivery is made is rightfully entitled to the goods, and places on it the entire risk of mistake. * * * In the application of this rule it makes no difference that the consignee refuses to receive the goods; in these circumstances it is the duty of the carrier to warehouse the goods and hold them subject to the consignor's order."

What was the duty of the carrier when the consignee refused to accept the car of lime? This rule is declared in 10 C. J. p. 269, § 386, headnotes 19, 20, 23:

"Where the consignee fails or refuses to receive the goods shipped, it is the duty of the carrier to store the goods either in its own warehouse or in that of some responsible third party, and to hold the goods subject to the order of the consignor for a reasonable time. * * * But where the carrier has complied with its duty to warehouse the goods, its strict common-law liability as insurer is at an end, and thereafter its relation to the goods is only that of warehouseman."

This court, in Southern Ry. Co. v. Webb, 143 Ala. 314, 39 South. 264, 111 Am. St. Rep. 45, 5 Ann. Cas. 97, stated:

"He (the carrier) has no right under any circumstances to deliver to a stranger."

J. C. Clarke, witness for defendant, testified:

The consignee did not accept the car of lime. "They canceled the order. When we received the cancellation, if I recall the facts, just as quick as the car arrived at Fernwood we reconsigned it, reordered it."

The connecting carrier when the consignee refused to receive the car of lime did not store it in its own warehouse or in that of a responsible third party to hold for the consignor for a reasonable time as was its duty, but this connecting carrier, under orders of a stranger, J. C. Clarke, "just as quick as the car arrived at Fernwood," delivered it to the I. C. Railroad Company to be delivered by it to Dobbs & Wetmore at Magnolia, Miss. This was a breach of its duty as carrier, which rendered the defendant, the initial carrier, liable to the owner of the lime for its value.

The Carmack Amendment statute has been held sufficiently broad and comprehensive to include and render the initial carrier liable for damages caused by the terminal or final connecting carrier's failure to store the goods for the account of the consignor, when the consignee refuses to accept them, and for "damages due to a misdelivery by the terminal carrier." Carmack Amendment, Act June 29, 1906, 34 Stat. 595, c. 3591, § 7 (U. S. Comp. St. §§ 8604a, 8604aa); Wien v. N. Y. Cent. R. Co., 166 App. Div. 766, 152 N. Y. Supp. 154; 10 C. J. pp. 524, 525, §§ 858, 860, headnotes 22, 23, 32, 33.

The general rule is stated thus in 10 C. J. p. 525, § 860, headnotes 22, 23:

"The liability of the initial carrier under the statute is the same as if it owned a continuous line from the point of shipment to the point of destination, or, as otherwise expressed, its effect is to make the connecting carrier the agent of the initial carrier, the same as if it had contracted for through carriage to the point of destination."

See Galveston, etc., R. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516.

There is evidence and reasonable inferences that may be drawn by the court from facts proven that would entitle the plaintiff to recover of the defendant the value of the lime. This the trial court did by its judgment. The evidence before the court was partly by deposition and partly oral. It was sufficient to sustain the judgment, and we do not think it should be disturbed. It is not contrary to the great weight of the evidence, but the evidence supports and sustains the judgment. McMillan v. Aiken, 205 Ala. 41, 88 South. 135; Bolen v. Bolen, 205 Ala. 114, 87 South. 797; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 South. 423, headnote 2.

There is no error in the record, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.